UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ASCEND LEARNING, LLC, and ASSESSMENT TECHNOLOGIES INSTITUTE, L.L.C., | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * * | Civil Action No. 22-cv-11978-ADB |
| BRIDGETTE BRYAN and SPIN-LEARNING, LLC, | * * * | |
| Defendants. | * * * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Ascend Learning, LLC ("Ascend") and Assessment Technologies Institute, L.L.C.

("ATI") (collectively, the "Plaintiffs" or the "Company"), bring this action against Bridgette

Bryan ("Bryan"), a former employee of the Company, and SPIN-Learning, LLC ("SPIN"), a

direct competitor of the Company, which Plaintiffs allege is Bryan's alter ego (collectively,

"Defendants"). See [ECF No. 18 ("Am. Compl.")].  Currently before the Court is Defendants'

motion to dismiss for lack of personal jurisdiction and failure to state a claim.  [ECF No. 22].

For the following reasons, Defendants' motion, [ECF No. 22], is GRANTED in part and

DENIED in part.

1

I.    **BACKGROUND**

    A.    **Factual Background[1]**

        1.    <u>The Company and Bryan's Employment with the Company</u>

The Company "develops and owns . . . online educational resources that are purchased by nursing schools . . . for use with their nursing curriculum, and used by their students in studying a wide range of nursing-related subjects." [Am. Compl. ¶ 21]. These online resources include "review materials, textbooks, videos, study guides, [materials on] test-taking strategies, critical thinking and clinical judgment skills, practice tests to assess a student's understanding of specific nursing topics, proctored assessments, [and] predictive assessments to determine the likelihood of student success." [<u>Id.</u>].

At all times relevant to Plaintiffs' claims, Bryan was a resident of Mississippi. <u>See</u> [Am. Compl. ¶ 11; ECF No. 24 ¶ 2]. She started working as a part-time contractor for the Company, as a nurse educator, in July 2010, before taking a full-time position in January 2011. [ECF No. 24 ¶¶ 4–5]. Throughout her employment with the Company, Bryan worked on content related to the National Council Licensure Examination ("NCLEX"), a nursing licensing examination in the United States and Canada. [Am. Compl. ¶¶ 1–2 & ¶ 1 n.1]. Her initial full-time position, in 2011, was "ATI Live Review Educator and NCLEX Specialist." [<u>Id.</u> ¶ 29]. Shortly thereafter, Bryan was promoted to a "management position." [ECF No. 24 ¶ 5]. In 2018, she was promoted again, this time to Director of NCLEX Services where she was "responsible for

---

[1] As relevant to Defendants' motion to dismiss for failure to state a claim, facts are taken from the Amended Complaint and assumed to be true. <u>Ruivo v. Wells Fargo Bank</u>, N.A., 766 F.3d 87, 90 (1st Cir. 2014). As relevant to Defendants' motion to dismiss for lack of personal jurisdiction, facts are also drawn from additional materials that the Court may consider in this context. <u>See</u> <u>Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.</u>, 825 F.3d 28, 34 (1st Cir. 2016) (noting that in ruling on personal jurisdiction motions, courts may consider "whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts").

overseeing delivery of NCLEX Services in the Great Lakes region of the United States";
"executing and planning implementation of ATI NCLEX Services in her designated region,
leading an ATI NCLEX Services team, and supporting product development for ATI NCLEX
Services." [Am. Compl. ¶ 29]. At all relevant times, as a condition of her employment, Bryan
was required to maintain her Registered Nurse license. [ECF No. 24 ¶ 7]. Bryan resigned from
the Company on or around May 19, 2022. [Am. Compl. ¶ 97].

2. <u>Bryan's Employment Agreement</u>

On or about December 19, 2010, Bryan executed an Intellectual Property, Confidentiality
and Non-Compete Agreement with the Company, [ECF No. 18 ¶ 4], and on December 2, 2011,
she, along with other employees, signed an updated Confidentiality, Inventions and Non-
Solicitation Agreement ("2011 Agreement"). [<u>Id.</u>]; <u>see</u> [ECF No. 18-1].[2] The 2011 Agreement
imposes various obligations and restrictions on Bryan's conduct. [ECF No. 18-1 ¶¶ 1–5]. For
example, the terms of the 2011 Agreement provide that Bryan could not compete with the
Company or use business opportunities for her personal gain or that of a third party, while
employed at the Company, and that intellectual property rights resulting from her work, during
and for the year after her termination, would be assigned to the Company. Additionally, the
terms of the 2011 Agreement limited the scope of permissible interactions with the Company's
customers, potential customers, and employees, during the year following termination, and her
use of the Company's confidential information during and after termination. [<u>Id.</u>]. Other
relevant provisions are discussed in the context of the Court's analysis *infra*.

---

[2] Plaintiffs do not allege that SPIN signed either of these agreements.

3.   Bryan's Development and Establishment of SPIN and Recruitment of
Company Employees and Customers

Defendant SPIN is a Mississippi LLC with its principal place of business in Biloxi,

Mississippi.  [Am. Compl. ¶ 12; ECF No. 24 ¶ 12].  SPIN is not registered to do business in

Massachusetts; has no offices or employees in Massachusetts; has no property in Massachusetts;

and has no bank accounts, mailboxes, or phone numbers in Massachusetts.  [ECF No. 24 ¶¶ 12–

16].  Bryan is the manager, registered agent, majority owner of SPIN, and the only current full-

time employee.  [Id. ¶¶ 10–11, 18].  SPIN offers various educational services, including, as

relevant here, services related to preparing for the NCLEX examination.  [Am. Compl. ¶ 36].

Plaintiffs assert there are "are striking similarities between SPIN's business and the [Plaintiffs'],

including but not limited to, SPIN's use of online learning modules, test-taking strategies, online

assessments, individualized study plans, checklists, remediation strategies, faculty updates and

progress reports, and psychometricians for a predicative algorithm and other analytics," [id.

¶ 38], and that SPIN's "one-on-one coaching" and multi-day online NCLEX preparation course

are also "strikingly similar" to services offered by Plaintiffs, [id.].

While still employed by the Company, Bryan filed SPIN's Certificate of Formulation in

January 2022 and developed, created, and operated SPIN; engaged other Company employees to

work on SPIN materials; and used the Company's confidential information and intellectual

property to develop materials for SPIN.  [Am. Compl. ¶¶ 61–76].

Several weeks after her resignation from the Company, on or around May 19, 2022, the

Company received an internal complaint that Bryan was actively recruiting Company employees

to work for SPIN.  [Am. Compl. ¶ 97].  Following an internal investigation, the Company

concluded that Bryan had "solicited and attempted to induce" at least three Company employees

who worked on the NCLEX Services team to work for SPIN.  [Id. ¶ 98].  Thereafter, Bryan

4

continued to solicit Company employees and ultimately hired several Company employees.  [Id.
¶ 102].  One of these employees, Diane Harris, had worked for the Company since 2012 and
executed an employment agreement with the Company on or around January 4, 2012 ("Harris
Agreement").  [Id.].  At the time she resigned from the Company in June 2022, Harris held the
position of "ATI Nurse Educator NCLEX Team Lead."  [Id.].  At SPIN, Harris was the "Director
of Academic Success."  [Id.].

        Bryan, Harris, and other SPIN employees also solicited Company clients to purchase
SPIN products and services.  [Am. Compl. ¶¶ 108–112].

        In developing materials for SPIN after her resignation from the Company, Bryan also
continued to rely on the Company's confidential information.  For example, in September 2022,
Bryan posted a video on the SPIN YouTube channel, entitled "Intrinsic Motivation for GenZ
Students" ("YouTube Video").  [Am. Compl. ¶ 84].  The YouTube Video relied on content
contained in a presentation, entitled "SPEAKing to GenZ" ("Company Presentation"), that Bryan
had delivered in October 2021 while she was employed at the Company.  [Id. ¶¶ 80, 84].  "ATI
owns . . . the valid and subsisting U.S. copyright registration" in the Company Presentation.  [Id.
¶ 81].  Plaintiffs allege that Defendants copied the steps of Plaintiffs' "proprietary learning
model called 'SPEAK,'" [id. ¶¶ 85–90], including verbatim phrases and graphics, [id. ¶¶ 91–94].

    **B.       Procedural History**

        Plaintiffs filed their original complaint on November 21, 2022, [ECF No. 1], and the
Amended Complaint, which is the operative complaint, on January 5, 2023, [Am. Compl.].  In
their Amended Complaint, Plaintiffs raise claims related to Defendants' alleged breach of the
2011 Agreement, including: breach of the duty of loyalty (Count I), [id. ¶¶ 119–126]; breach of
intellectual property rights (Count II), [id. ¶¶ 127–132]; breach of non-solicitation of employees,

(Count III), [id. ¶¶ 133–137]; breach of non-solicitation of customers (Count IV), [id. ¶¶ 138–144]; and breach of confidentiality (Count V), [id. ¶¶ 145–149].  Plaintiffs also raise a claim for tortious interference with contractual relationships, based on Defendants' alleged inducement of other Company employees to breach their employment agreements (Count VI), [id. ¶¶ 150–156]; and a claim for tortious interference with contractual and advantageous business relationships, based on Defendants' alleged interference with the Company's agreements and relationships with their customers (Count VII), [id. ¶¶ 157–163].  Finally, Plaintiffs raise a claim of copyright infringement related to the Company Presentation (Count VIII).  [Id. ¶¶ 164–171].

On January 20, 2023, Defendants moved to dismiss the Amended Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), [ECF No. 22], which Plaintiffs opposed on February 17, 2023, [ECF No. 35].

## II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.    Legal Standard

To establish personal jurisdiction, in general, "a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (citing Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).[3]  "[T]he touchstone of due

---

[3] As relevant to Plaintiffs' copyright infringement claim: when a party asserts a federal question claim, a federal court can "exercise personal jurisdiction over a defendant . . . if that defendant has sufficient contacts with the United States as a whole," Lorelei Corp. v. Cnty. of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991) (quoting Whistler Corp. v. Solar Elecs., Inc., 684 F. Supp. 1126, 1128 (D. Mass. 1988)).  That said, where a federal statute "does not provide for nationwide service," id. at 720, as the Copyright Act does not, Am. Century Home Fabrics Inc. v. Ashley Furniture Indus., Inc., No. 06-cv-10932, 2006 WL 8458434, at *1 (D. Mass. Oct. 31, 2006), the "Court must conduct the same personal jurisdiction inquiry as in a diversity case, focusing on the defendant's contacts with Massachusetts rather than with the United States as a

process is that the defendant must 'have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 122 (1st Cir. 2022) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The Massachusetts long-arm statute also limits when courts may exercise personal jurisdiction over nonresidents.  The First Circuit "has sometimes treated the limits of Massachusetts's long-arm statute as coextensive with those of the Due Process Clause.  Recently, however, [the First Circuit] ha[s] suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution."  Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016) (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002); and then citing Cossart v. United Excel Corp., 804 F.3d 13, 18–19 (1st Cir. 2015)).  The Court "need not address this possible tension . . . however, because [] defendants treat the statutory and constitutional standards as identical, and so have waived any argument that the long-arm statute does not reach as far as [Due Process] allows. Accordingly, [to the extent necessary, the Court will] proceed directly to the constitutional inquiry."  Id.; see [ECF No. 26 at 8].

Plaintiffs bear the burden of establishing that the court has jurisdiction over Defendants. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).  "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima facie' standard governs its determination."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618

---

whole," Jorge v. Adler, No. 22-cv-30075, 2023 WL 1421595, at *3 (D. Mass. Jan. 31, 2023) (quoting Motus, LLC v. CarData Consultants Inc., 520 F. Supp. 3d 87, 91 (D. Mass. 2021)).

(1st Cir. 2001).  Under this standard, the Court takes as true whatever properly documented facts a plaintiff proffers, construes those facts in the light most favorable to the plaintiff, and considers facts put forward by the defendant only to the extent they are uncontradicted.  See Phillips, 530 F.3d at 26; Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006).

## B.    Discussion

Defendants argue that Plaintiffs have failed to establish that either Defendant has sufficient contacts with Massachusetts to satisfy the Due Process requirements for exercising personal jurisdiction.  [ECF No. 26 at 7–14].  Plaintiffs respond that the Court need not engage in a minimum contacts analysis because they have adequately plead a controlling forum selection clause, through which Bryan consented to personal jurisdiction in Massachusetts, as to herself and her alter ego, SPIN.  [ECF No. 35 at 12–17].  Further, even assuming that the forum selection clause is not controlling, Defendants have the requisite contacts with Massachusetts through Bryan's employment with Plaintiffs.  [Id.].

### 1.    Bryan

"A party to a contract may waive its right to challenge personal jurisdiction by consenting to personal jurisdiction in a forum selection clause."  Inso Corp. v. Dekotec Handelsges, mbH, 999 F. Supp. 165, 166 (D. Mass. 1998) (citing M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 11, (1972) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court.")); Jacobson v. Mailboxes, Etc. U.S.A., 646 N.E.2d 741, 743–44 (Mass. 1995)). "Massachusetts also recognizes forum selection clauses as a valid basis for finding jurisdiction over a non-resident."  Inso Corp., 999 F. Supp. at 166 (citing Leasecomm Corp. v. Crockett, No. 9456, 1998 WL 15935, *2 (Mass. App. Div. Jan. 13, 1988)); Jacobson, 646 N.E.2d at 743–44). Further, "[i]t is well established that forum selection clauses 'are prima facie valid and should be

enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" <u>Rivera v. Centro Medico de Turabo, Inc.</u>, 575 F.3d 10, 18 (1st Cir. 2009) (quoting <u>Bremen</u>, 407 U.S. at 10); <u>Huffington v. T.C. Grp., LLC</u>, 637 F.3d 18, 23 (1st Cir. 2011) ("[T]he party resisting enforcement bears the 'heavy burden' of demonstrating why the clause should not be enforced." (quoting <u>Bremen</u>, 407 U.S. at 17)).[4]   The Supreme Court has identified four grounds for finding a forum selection clause unenforceable: "fraud or overreaching," "enforcement would be unreasonable and unjust"; proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court"; and "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." <u>Huffington</u>, 637 F.3d at 23 (quoting <u>Bremen</u>, 407 U.S. at 15, 18).

Here, Paragraph 13 of the 2011 Agreement, titled "Choice of Law and Forum," provides that "the State and/or Federal courts located in the Commonwealth of Massachusetts shall have nonexclusive jurisdiction over any and all disputes arising from this Agreement."  [ECF No. 18-1 ¶ 13].  Defendants do not challenge this provision as unenforceable for any of the reasons listed above, or as inapplicable to any of Plaintiffs' claims against Bryan.  Rather, Defendants argue that this provision does not provide a basis for jurisdiction over Bryan, because the 2011

---

[4] Because "[f]ederal common law and Massachusetts law 'treat forum selection clauses identically,'" <u>Ad-A-Day Co. v. Xerox Corp.</u>, No. 10-cv-11226, 2010 WL 3824118, at *1 n.2 (D. Mass. Sept. 28, 2010) (quoting <u>Rooney v. Biomet, Inc.</u>, 63 F. Supp. 2d 126 (D. Mass. 1999), <u>aff'd</u>, 215 F.3d 1312 (1st Cir. 2000), <u>and order vacated and reentered</u>, 197 F.R.D. 209 (D. Mass. 2000)), the Court need not address "whether 'the forum selection clause is enforceable as 'procedural' and look to a federal test of validity or instead treat it as 'substantive' and look to pertinent state law,'" <u>id.</u> (quoting <u>Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc.</u>, No. 09-2163, 2010 WL 3491168, *2 (1st Cir. Sept. 8, 2010)).

Agreement is "wholly invalid." [ECF No. 26 at 14].[5]  As further discussed in the proceeding

section *infra*, the Court does not find, at this stage, that the 2011 Agreement is invalid for any of

the reasons that Defendants have raised.  As such, given that forum selection clauses are

presumed valid and where Defendants have raised no other argument that Paragraph 13 is

unenforceable or inapplicable to Plaintiffs' claims, the Court finds that (1) Defendants have

failed to carry their "heavy burden" of showing that the forum selection clause is unenforceable,

and (2) that Plaintiffs have made a prima facie showing of personal jurisdiction as to Bryan.

Defendants' motion to dismiss Bryan as a defendant for lack of personal jurisdiction is therefore

DENIED.[6]

      2.    SPIN

Defendants also argue that Plaintiffs have failed to establish that SPIN has sufficient

contacts with Massachusetts to allow the Court to exercise either general or specific personal

jurisdiction over it consistent with due process.  [ECF No. 26 at 9–14].  Plaintiffs respond that

the Court may exercise personal jurisdiction over SPIN as it would Bryan, because SPIN is

Bryan's alter ego.  [ECF No. 35 at 16–17].

---

[5] Defendants also argue that the forum selection clause does not confer personal jurisdiction over
Bryan because the "the copyright infringement claims lack any support that Plaintiffs'
presentation is substantially similar to that of Bryan's" and "Plaintiffs' Amended Complaint fails
to state causes of action upon which relief can be granted."  [ECF No. 26 at 14].  As noted above,
in the Due Process personal-jurisdiction analysis, pursuant to Rule 12(b)(2), courts consider
Defendants' contacts with the forum.  Because it is unclear from the briefs as to how
Defendants' arguments, which appear to relate to the viability of Plaintiffs' claims under Rule
12(b)(6), have any bearing on the Court's personal jurisdiction analysis, the Court declines to
consider them in this context.

[6] Because the Court finds that Plaintiffs have made a prima facie showing of a controlling forum
selection, in which Bryan consented to personal jurisdiction in Massachusetts, it need not address
Plaintiffs' arguments concerning Bryan's contacts with Massachusetts.

Under Massachusetts law, "a party may seek to pierce a corporate veil under an alter ego theory which is equitable in nature." In re Raymond, 529 B.R. 455, 471 (Bankr. D. Mass. 2015) (citation omitted).  Traditionally, an action to "pierce the corporate veil is brought by parties injured by [a] corporation to hold liable those corporate officers, directors and/or stockholders whose fraudulent conduct of the corporation caused the injury to the plaintiffs.  Liability for harm caused by the corporation is imposed upon the corporation's alter egos by disregarding the corporate form." Id. at 475 n.13 (quoting Nat'l City Bank of Minn. v. Lapides (In re Transcolor Corp.), 296 B.R. 343, 362 (Bankr. D. Md. 2003)).[7]  "In contrast, reverse veil piercing is the means by which the assets of a corporation or other entity are reached to satisfy the liabilities of the shareholder or owner of the target entity." Id. at 475 (citing In re ALT Hotel, LLC, 479 B.R. 781, 801–02 (Bankr. N.D. Ill. 2012)).  Further,

> [f]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

CDM Smith, Inc. v. Thevar, No. 21-cv-10249, 2022 WL 4629239, at *8 (D. Mass. Sept. 30, 2022) (quoting Harrelson v. Seung Heun Lee, 798 F. Supp. 2d 310, 315–16 (D. Mass. 2011)).

Nevertheless, "[i]n Massachusetts, the standard for piercing the corporate veil 'is a demanding one.' . . . The corporate veil 'may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity.'" CDM Smith, Inc., 2022 WL 4629239, at *8 (quoting Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 372 (D. Mass. 2017)).  In the context of traditional corporate veil piercing, Massachusetts law states that piercing the veil may be

---

[7] Courts have held that "the same principles would apply for alter ego liability to attach to members of limited liability companies." In re Wolverine, Proctor & Schwartz, LLC, 447 B.R. 1, 36 (Bankr. D. Mass. 2011).

appropriate "(a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence . . . or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities." My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 752 (Mass. 1968). This test has been further refined into twelve factors that courts consider holistically, when determining whether it is appropriate to pierce a corporate veil:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Att'y Gen. v. M.C.K., Inc., 736 N.E.2d 373, 385 n.19 (Mass. 2000) (citations omitted). "These factors are not simply added up, but rather are considered in an integrated manner based on all of the facts presented." Lothrop v. N. Am. Air Charter, Inc., 95 F. Supp. 3d 90, 101 (D. Mass. 2015).

Here, Plaintiffs state, based on Bryan's Declaration, see [ECF No. 24], that "Bryan is the owner, Manager, and Registered Agent of SPIN" and that SPIN "has no other full-time employees," and, based on SPIN's Certificate of Formulation, that "SPIN's principal place of business is located at the same address at which Bryan resides," [ECF No. 35 at 17 (citing ECF No. 24 ¶¶ 10–11, 18)]; see [ECF No. 182]. Plaintiffs further allege that Bryan has varied responsibilities, including "recruit[ing] SPIN employees and customers, and develop[ing] SPIN products and services, including sales presentations and the SPIN-Learning app." [ECF No. 35

at 17 (citing Am. Compl. ¶¶ 71–73, 78–94, 97–103, 106–112)].  Based on this information,

Plaintiffs assert "Bryan is exercising sole control over the company."  [Id.].  The Court finds that,

given "the demanding standard for piercing the corporate veil," CDM Smith, Inc., 2022 WL

4629239, at *9, Plaintiffs' evidence and allegations are insufficient to establish SPIN is Bryan's

alter ego.  Although Bryan is the owner and only full-time employee, plays many roles at SPIN,

and seemingly operates SPIN from her home, Plaintiffs have failed to proffer evidence that

Bryan, for example, "siphoned away corporate funds [for personal use;] used the entity as a shell

for [her] own personal benefit or to promote fraud[;]" or "disregarded [other] corporate

formalities."  Sensitech, Inc. v. Limestone FZE, 548 F. Supp. 3d 244, 255 (D. Mass. 2021)

(citing Att'y Gen., 736 N.E.2d at 381 n.19).  The Court finds that Plaintiffs have failed to

adequately establish that SPIN is the Bryan's alter ego and have therefore failed to make a prima

facie showing of personal jurisdiction over SPIN.

      Plaintiffs alternatively request that the Court allow limited jurisdictional discovery.  [ECF

No. 35 at 17 n.8].  The First Circuit has "long held that 'a diligent plaintiff who sues an out-of-

state corporation and who makes out a colorable case for the existence of *in personam*

jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation

interposes a jurisdictional defense.'"  Swiss Am. Bank, 274 F.3d at 625 (quoting Sunview

Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997)).  "However, that

entitlement is not absolute. . . . [E]ven when the plaintiff has been diligent and has made a

colorable claim for personal jurisdiction, the district court still has broad discretion to decide

whether discovery is required."  Id. at 625–26 (internal citations and quotation marks omitted).

Courts have declined to allow discovery where, as here, "plaintiffs generally request discovery

without any indication of the specific information they would seek or expect to find that would

establish personal jurisdiction." <u>Barrett v. H&R Block, Inc.</u>, 652 F. Supp. 2d 104, 116 (D. Mass. 2009).  The Court exercises its discretion and <u>DENIES</u> Plaintiffs' request for jurisdictional discovery.

The Court therefore also <u>GRANTS</u> Defendant's motion to dismiss SPIN as a defendant, but does so without prejudice.  If, after conducting permissible discovery, Plaintiffs uncover further evidence that SPIN is the alter ego of Bryan and that Bryan is abusing the corporate form to shield herself from liability against Plaintiffs, then the Court will consider a timely motion to amend under Rule 15(a)(2) supported by such newly discovered evidence.

## III.      MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.      Legal Standard

Under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Cardigan Mountain Sch. v. N.H. Ins. Co.</u>, 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)).  This pleading standard requires "more than labels and conclusions." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).  When evaluating the sufficiency of a complaint, the Court "first must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" <u>Cardigan Mountain Sch.</u>, 787 F.3d at 84 (quoting <u>García-Catalán v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013)) (further internal quotations omitted).  "Second, the court must determine whether the factual allegations are sufficient to support the reasonable

inference that the defendant is liable for the misconduct alleged." García-Catalán, 734 F.3d at 103 (internal quotation marks and citation omitted).  In conducting this analysis, the Court must accept all well-pleaded facts as true and analyze those facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff.  U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).

**B.       Discussion**

Defendants argue that because the 2011 Agreement is invalid and unenforceable, Plaintiffs' claims related to the Agreement must be dismissed.  They further assert that the Harris Agreement is also invalid and unenforceable, which means that Count VI, alleging tortious interference with other employees' employment agreements, must also be dismissed.  Finally, Defendants argue that Plaintiffs have failed to adequately allege a copyright claim.

1.       Validity and Enforceability of the 2011 Agreement and Harris Agreement

i.       Material Changes to Bryan's Employment

Defendants assert that material changes in Bryan's employment after she signed the 2011 Agreement invalidate the 2011 Agreement.  [ECF No. 26 at 15–17].  Although Defendants do not expressly indicate which claims this argument applies to, it would seem to counsel dismissal of all the breach-of-contract claims, Counts I–V.

"Under [Massachusetts'] 'material change' doctrine, a 'non-solicitation agreement or covenant not to compete may be deemed void if there are material changes in the employment relationship between an employee and the employer.'"  NuVasive, Inc. v. Day, 954 F.3d 439, 444 (1st Cir. 2020) (quoting Patriot Energy Grp., Inc. v. Kiley, No. SUCV2013-04177, 2014 WL 880880, at *7 (Mass. Super. Ct. Feb. 26, 2014)).  "Changes such as a promotion to a new position, an increase in salary or a conferral of additional responsibilities can be evidence of a

material change in the employment relationship." Dodge v. Mevion Med. Sys., Inc., 575 F. Supp. 3d 236, 241 (D. Mass. 2021) (citing Lycos v. Jackson, No. 20043009, 2004 WL 2341335, at *3 (Mass. Super. Ct. Aug. 25, 2004)). That said, "[t]he material change rule further requires evidence that the parties intended to mutually abandon and rescind their initial agreement," which may be "shown through the parties' words, writing, or conduct." Knightly v. CentiMark Corp., No. 18-cv-12269, 2019 WL 13300457, at *2 (D. Mass. Mar. 19, 2019) (citing Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 16 (1st Cir. 2009)).

Here, Plaintiffs allege, for example, that Bryan was promoted after signing the 2011 Agreement, see [Am. Compl. ¶¶ 3, 29], which could be evidence of a material change. The plain language of Paragraph 2 of the 2011 Agreement, titled "Change in Employment Status," however, also suggests that the parties intended the terms of the 2011 Agreement to continue to apply regardless of changes in Bryan's employment. See [ECF No. 18-1 ¶ 2];[8] A.R.S. Servs., Inc. v. Morse, No. MICV201300910, 2013 WL 2152181, at *9 (Mass. Super. Apr. 5, 2013) (finding "substantial likelihood of successfully establishing that the Agreement is enforceable and that [employee's] change in employment status did not act to vitiate the bargained for Agreement" in part due to provision stating that agreement would be enforceable and valid "notwithstanding any change in [employee's] duties, responsibilities, position or title"). The Court therefore finds that whether Bryan's promotion and any other changes in Bryan's employment "would be sufficiently material to require execution of a new agreement" "is not evident from the pleadings," "require[s] factual development through discovery," and this issue is therefore "unripe at the current stage of litigation." Dodge, 575 F. Supp. 3d at 241 (quoting

---

[8] Paragraph 2, titled "Change in Employment Status," provides: "The obligations and restrictions contained in this Agreement shall continue to apply to You regardless of whether the You are promoted, demoted, transferred or if Your job assignment changes in any way during the course of Your employment with Ascend." [ECF No. 18-1 ¶ 2].

MOCA Sys., Inc. v. Bernier, No. 13-cv-10738, 2013 WL 6017295, at *4 (D. Mass. Nov. 12, 2013)); see also id. (noting that the court had "found no case in which a similar question has been resolved at the motion to dismiss stage."). The Court therefore DENIES Defendants' motion to dismiss under Rule 12(b)(6) on this ground.

> ii.     Restrictions on Nursing Prohibited by Mass. Gen. Laws. ch. 112, § 74D

Defendants also argue that the "non-compete provisions" of the 2011 Agreement, and presumably similar provisions in the Harris Agreement, are invalid and unenforceable because they restrict the practice of nursing, which is prohibited by Mass. Gen. Laws. ch. 112, § 74D. [ECF No. 26 at 14–15]. As such, Defendants argue Count IV (breach of non-solicitation of customers) and Count VI (tortious interference with contractual relationships) must be dismissed.

Section 74D states, in relevant part:

> **Any contract or agreement which creates or establishes the terms of a partnership, employment, or any other form of professional relationship** with a nurse registered to practice as a registered nurse . . . or a practical nurse registered to practice as a licensed practical nurse . . . **which includes any restriction of the right of such nurse to practice as a nurse** in any geographical area for any period of time **after the termination of such partnership**, employment or professional relationship **shall be void and unenforceable with respect to said restriction**. Nothing in this section shall render void or unenforceable any other provision of any such contract or agreement.

Mass. Gen. Laws. ch. 112, § 74D (emphasis added).

There is very little caselaw interpreting § 74D. Nevertheless, as relevant here, the Massachusetts Appeals Court has held that an employee is only "protected by the provisions of § 74D," if they are "practic[ing] as a nurse." Gabriel Care, LLC v. Borden Care, LLC, 46 N.E.3d 599 (Mass. App. Ct. 2016) (unpublished). In Gabriel Care, an employer sought to enforce a noncompete provision against a former employee, who had held the positions of "registered nurse" and "care manager" and had started her own allegedly competing business, where she

held the titles of "manager, resident agent, and signatory." Id.  In reversing the trial court's entry

of summary judgment for the employee, the Appeals Court explained that "[a] particular job title

. . . without more supporting information, is not outcome determinative as to whether the

protections afforded by § 74D are triggered"; "[i]n the absence of . . . evidence" of the

employee's "role and responsibilities in these various positions," the trial court had erred in

finding that § 74D applied.  Id.

 Neither § 74D nor caselaw interpretating the statute provide a definition for "practic[ing]

as a nurse," but the Complaint, and the documents incorporated therein, allege titles for both

Bryan and Harris that seem far afield from a common sense understanding of that term.  Where

in Gabriel Care, one of the employee's titles was actually "registered nurse," here, Bryan's titles

at the Company, "ATI Live Review Educator and NCLEX Specialist" and "Director of NCLEX

Services," [Am. Compl. ¶ 29], and, at SPIN, "CEO," [ECF No. 18-3] and "registered agent,"

[ECF No. 18-2], do not suggest a nursing role.  Likewise, Harris's title at the Company was

"ATI Nurse Educator NCLEX Team Lead" and, at SPIN, "Director of Academic Success."

[Am. Compl. ¶ 102].  The Complaint does include some information on Bryan and Harris' roles

and responsibilities in these positions.  At the Company, Bryan was involved in overseeing

education programs and product development of services related to the NCLEX certification

exam and, at SPIN, recruiting employees, soliciting clients, and developing SPIN products and

services.  Further, at least one of Harris's responsibilities at SPIN is allegedly communicating

with potential clients.  Although these allegations suggest that Bryan and Harris were not and are

not currently practicing as nurses, rendering § 74D inapplicable, the Court will not make that

factual determination at this early stage of the litigation, based solely on the allegations set forth

in the Amended Complaint.  Either way, Defendants have not shown § 74D warrants dismissal

of Counts IV and VI, and Defendants' motion to dismiss on this ground is DENIED.[9]

iii.        Unreasonable Geographic Scope

Defendants next argue that the 2011 Agreement is facially invalid because it is a

noncompete agreement with an unlimited geographic scope.  [ECF No. 26 at 17].  Although not

indicated, the Court again assumes that this argument applies to all of Plaintiffs' breach of

contract claims (Counts I–IV).  Paragraph 3, titled "Non-Solicitation," states that, for one year

following the termination of her employment, Bryan would not:

> (1) "solicit, divert or accept business from a customer or potential customer on behalf of a
> competitor," or "otherwise offer products and services in competition with Ascend" to a
> customer or prospective customer [] with whom [Bryan] had contact while employed by
> Ascend or [] about whom [Bryan] obtained Confidential Information while employed by
> Ascend";
>
> (2) "induce or attempt to induce [the same group of customers and potential customers] to
> reduce or terminate its business with Ascend"; or
>
> (3) "hire any employee of Ascend, or hire any former employee who worked for Ascend
> at any time within the last year of [Bryan's] employment, or encourage, solicit or induce
> any Ascend employee to leave the Company."

[ECF No. 18-1 ¶ 3].

Whether Paragraph 3 is understood as a nonsolicitation agreement or a noncompetition

agreement,[10] Massachusetts law dictates that be it "reasonably limited in space and time."

---

[9] Because the Court holds that it cannot now resolve the threshold question of whether Bryan and
Harris were practicing as nurses, and therefore does not find that § 74D applies to invalidate the
2011 Agreement or Harris Agreement, the Court need not address Plaintiffs' other arguments as
to why § 74D does not apply.

[10] Plaintiffs urge that Paragraph 3 is a nonsolicition agreement, rather than a noncompetition
agreement, based on Mass. Gen. Laws ch. 149, § 24L.  Section 24L, which defines
"[n]oncompetition agreement" in the context of the Massachusetts Noncompetition Agreement
Act, and explicitly excludes "covenants not to solicit or hire employees of the employer" and
"covenants not to solicit or transact business with customers, clients, or vendors of the
employer," does not govern agreements, such as those relevant here, which were formed prior to

19

Boulanger v. Dunkin' Donuts, Inc., 815 N.E.2d 572, 577 (Mass. 2004) ("A covenant not to compete is enforceable only if it is necessary to protect a legitimate business interest, **reasonably limited in time and space**, and consonant with the public interest." (citation omitted)); Oxford Glob. Res., LLC v. Hernandez, 106 N.E.3d 556, 566 (Mass. 2018) ("Superior Court judges have applied these same principles to employee nonsolicitation agreements." (collecting cases)); see also Seniorlink Inc. v. Landry, No. 19-cv-11248, 2021 WL 3932309, at *8 (D. Mass. Sept. 2, 2021) (applying these principles to a nonsolicitation agreement), appeal dismissed, No. 21-1780, 2022 WL 4641976 (1st Cir. July 18, 2022).

Although Paragraph 3 does not articulate a specific geographic scope, the Court finds that the fact that it is limited to customers or perspective customers that Bryan obtained confidential information about or engaged with while at the Company would likely serve as a functional geographic limit, particularly given that Plaintiffs have alleged that much of Bryan's work as Director of NCLEX Services was focused in the Great Lakes Region.  See [Am. Compl. ¶ 29]; Briggs v. R.R. Donnelly & Sons, Co., 446 F. Supp. 153, 157 (D. Mass. 1978) ("[w]here a geographic limitation would serve no purpose, the absence of a geographic limitation should not, by itself, render a covenant unreasonable").  Further, a one-year restriction on soliciting or encouraging Company employees to leave the Company, even without a geographic limit, does not seem patently unreasonable.  Seniorlink Inc., 2021 WL 3932309, at *2, 9 (finding "[a] one-year restriction that applies only, and specifically, to current employees and affiliates of [the

---

October 2018.  See Automile Holdings, LLC v. McGovern, 136 N.E.3d 1207, 1217 (Mass. 2020) ("[T]he Massachusetts Noncompetition Agreement Act . . . applies only to employee noncompetition agreements entered into on or after October 1, 2018.").

company] [was] reasonable in scope" and enforceable).  As such, at this early stage, the Court

declines to find that that Paragraph 3 is unreasonably broad.[11]

        2.     <u>Failure to Adequately Allege Copyright Infringement</u>

Finally, Defendants argue that Plaintiffs have failed to state a claim for copyright

infringement, and have specifically failed to allege "substantial similarity."  [ECF No. 26 at 17–

22].  "To prevail on a claim of copyright infringement, the plaintiff must show ownership of a

valid copyright and illicit copying."  <u>Yankee Candle Co. v. Bridgewater Candle Co.</u>, 259 F.3d

25, 33 (1st Cir. 2001) (citations omitted).  The First Circuit "conducts a two-part test to

determine if illicit copying has occurred.  First, a plaintiff must prove that the defendant copied

---

[11] As Plaintiffs concede, there are other "non-competition components" of the 2011 Agreement, [ECF No. 19], and these components also lack a geographic limit:

Paragraph 1, titled "Duty of Loyalty," states that during Bryan's employment she would "not compete with Ascend; [] solicit Ascend's employees to leave the employ of the Company; [nor] [] solicit Ascend's customers or prospective customers for the benefit of another company or employer."  [ECF No. 18-1 ¶ 1].

Paragraph 4, titled "Confidentiality," states that "during and after [her] separation of employment," Bryan would only "use Confidential Information of Ascend solely in the performance of [her] essential job duties as an employee of Ascend and [would] not use or disclose such Confidential Information for any other purpose, personal or otherwise, including without limitation: [] use in [her] capacity with a future employer; [] disclosure to a future employer or an employee thereof; or [] use of such Confidential Information in Your own business or for personal gain."  [ECF No. 18-1 ¶ 4].

The Court finds, however, that these terms are not subject to the same "reasonable time and scope" requirements as noncompete and non-solicitation agreements.  Pursuant to an employee's duties and obligations to their employer, even in the absence of an express covenant in an employment agreement, an employee may not, across any geography, engage in "active competition during employment, [] preparation solicitation of customers, [] misappropriation of trade secrets, [or] carrying away of certain confidential information like customer lists."  <u>See Perishables By Air, Inc. v. OceanAir, Inc.</u>, 862 N.E.2d 77 (Mass. App. Ct. 2007) (unpublished) (citing <u>Augat, Inc. v. Aegis, Inc.</u>, 565 N.E.2d 415, 419–20 (1991); <u>Hanover Ins. Co. v. Sutton</u>, 705 N.E.2d 279, 288 (Mass. App. Ct. 1999)); <u>see also Jet Spray Cooler, Inc. v. Crampton</u>, 282 N.E.2d 921, 924 (Mass. 1972).  It therefore follows that provisions that incorporate these obligations into an employment agreement also need not include a geographic limitation.

the plaintiff's copyrighted work, either directly or through indirect evidence." Id. (citing Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 60 (1st Cir. 2000)).  "Second, 'the plaintiff must prove that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'" Id. (quoting Segrets, Inc., 207 F.3d at 60).  Defendants do not dispute, for purposes of this Motion, (1) that Plaintiffs possessed a valid copyright in the Company Presentation, or (2) as relevant to illicit copying, that Defendants copied Plaintiffs' copyrighted work.  [ECF No. 26 at 17–18].  The Court therefore focuses its analysis on "substantial similarity."  Id.

"[T]wo works will be said to be substantially similar if a reasonable, ordinary observer, upon examination of the two works, would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression."  Hassett v. Hasselbeck, 757 F. Supp. 2d 73, 79–80 (D. Mass. 2010) (quoting T–Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 112 (1st Cir. 2006)). "Substantial similarity" is not typically decided on a motion to dismiss.  "[T]he determination of the extent of similarity that will constitute a substantial and hence, infringing similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations."  Larson v. Perry, No. 19-cv-10203, 2021 WL 352375, at *3 (D. Mass. Feb. 2, 2021) (quoting Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc., 914 F. Supp. 665, 677 (D. Mass. 1995)).  "For this reason, courts have held that questions of whether two works are 'substantially similar' present an 'extremely close question of fact' that 'have traditionally been reserved for the trier of fact.'"  Id. (quoting Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010)).  That said, though "unusual," id. "non-infringement may be decided as a matter of law either [where] the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury,

properly instructed, could find that the two works are substantially similar." Harney v. Sony
Pictures Television, Inc., 704 F.3d 173, 183 (1st Cir. 2013) (internal quotation marks and citation
omitted).

Plaintiffs allege that several elements of the YouTube Video were copied from the
Company Presentation, including: the Company's "proprietary" five-step "learning model";
verbatim phrases, including "Connected but Isolated" and "Tech Savvy but Anxious"; similar
phrases, including "Face to Face communication" and "Authentic, transparent relationships" (as
compared to the Company Presentation's use of "Face to Face, Authentic, Transparent
Relationships"); and graphics depicting information and concepts from other sources.  [ECF No.
18 ¶¶ 80–94].  Defendants urge that none of these elements, or any elements of the Company
Presentation, are copyrightable, and as such Plaintiffs' copyright claim must be dismissed.

"In no case does copyright protection for an original work of authorship extend to any
idea, procedure, process, system, method of operation, concept, principle, or discovery,
regardless of the form in which it is described, explained, illustrated, or embodied in such work."
17 U.S.C. § 102(b).  That said, "a compilation [of facts or data, for example,] is entitled to
copyright protection if its selection and arrangement of data is original."  Skinder-Strauss
Assocs., 914 F. Supp. at 671.  "Original, as the term is used in copyright, means only that the
work was independently created by the author (as opposed to copied from other works), and that
it possesses at least some minimal degree of creativity.  [T]he requisite level of creativity is
extremely low; even a slight amount will suffice."  Situation Mgmt. Sys., Inc. v. ASP.
Consulting LLC, 560 F.3d 53, 60 (1st Cir. 2009) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv.
Co., 499 U.S. 340, 345 (1991)).  Likewise, subject to some exceptions,[12] "*descriptions* of a

---

[12] Pursuant to the "merger doctrine," there is no copyright protection for an expression "'[w]hen
there is essentially only one way to express an idea.  [Where] the idea and its expression are

process or system[, for example,] are copyrightable."  Situation Mgmt. Sys., Inc., 560 F.3d at 61

(emphasis in original) (quoting Matthews v. Freedman, 157 F.3d 25, 27 (1st Cir. 1998)

("[C]opyright protects the original expressions of ideas but not the ideas expressed.")).  Finally,

although "[i]t is axiomatic that copyright law denies protection to 'fragmentary words or

phrases,'" Hassett, 757 F. Supp. 2d at 86 (quoting CMM Cable Rep, Inc. v. Ocean Coast Props.,

Inc., 97 F.3d 1504, 1519 (1st Cir. 1996)), "a short phrase may be subject to copyright protection

if it reflects sufficient creativity," Greene, 914 F. Supp. 2d at 117 (citing Soc'y of Holy

Transfiguration Monastery, Inc., 689 F.3d at 52.  "As so often is the case, context matters."  Id.

(quoting Soc'y of Holy Transfiguration Monastery, Inc., 689 F.3d at 52).

        The Court finds that there are elements of the Company Presentation that are not so

clearly non-copyrightable as to warrant dismissal at this early stage of the litigation.  See, e.g.,

Mallon v. Marshall, 95 F. Supp. 3d 274, 277–78 (D. Mass. 2015) (finding, in ruling on a motion

to dismiss, that "[t]he fact that Plaintiff's work describes ideas, processes or systems does not

make his expression non-copyrightable and resolution of this issue will require a far closer

review of the papers than is necessary at this stage of the case.").  There are antecedent issues

that the Court cannot evaluate based only on the allegations in the Amended Complaint and the

materials incorporated therein.  For example, Defendants argue that phrases "connected but

isolated" and "tech savvy but anxious," which appear in both the Company Presentation and

YouTube Video, "describe[] relational traits of the Gen Z population . . . and the words

---

inseparable[,] copyright is no bar to copying that expression.'"  Greene v. Ablon, 914 F. Supp.
2d 110, 114 (D. Mass. 2012) (alterations in original) (citing Soc'y of Holy Transfiguration
Monastery, Inc. v. Gregory, 689 F.3d 29, 53 (1st Cir. 2012), aff'd, 794 F.3d 133 (1st Cir. 2015).
Additionally, "under the doctrine of 'scenes a faire,' the Court must not include 'elements of a
work that are for all practical purposes indispensable, or at least customary, in the treatment of a
given subject matter.'"  Id. (quoting Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 68 (1st
Cir. 2009)).

themselves are common vernacular used to describe Gen Z, as any of the available research material, freely available on the internet, on the subject reveals."  [ECF No. 26 at 21].  As another example, Defendants assert, based on a screenshot of the YouTube Video in the Amended Complaint, that the Company Presentation's use of the phrase "Face to Face, Authentic Transparent Relationships" is noncopyrightable because it is a "short phrase[]" that belongs to "authors Seemiller & Grace (2016)," as evidenced by the "copyright citation in Plaintiffs' screenshot,"  [Id.].  To evaluate these issues, and whether these elements nonetheless possess sufficient originality, would require the Court to review materials beyond those properly considered on a motion to dismiss.  As such, the Court does not find, at this stage, that any "similarity between [the Company Presentation and the YouTube Video] concerns only non-copyrightable elements of the [Company Presentation]."  Harney, 704 F.3d at 183.

Defendants additionally argue that even if elements of the Company Presentation are copyrightable, the Company Presentation and the YouTube Video are not substantially similar because "the flow, design elements, colors, styling, as well as the individual elements of the [YouTube Video] are in no way similar to the elements of [the Company Presentation]."  [ECF No. 26 at 20].  As noted above, this often "present[s] an 'extremely close question of fact' and therefore [is] '[] traditionally [] reserved for the trier of fact.'"  Larson, 2021 WL 352375, at *3 (quoting Peter F. Gaito Architecture, LLC, 602 F.3d at 63).  The Court will not address this issue on a motion to dismiss.

Finally, Defendants argue that Plaintiffs have failed to adequately claim (1) "actual damages," or (2) any profits of Defendants, which may be recoverable pursuant to Section 504(b) of the Copyright Act.  [ECF No. 26 at 22–23].  "Under the Copyright Act, a plaintiff who proves infringement may recover either (1) compensable damages pursuant to 17 U.S.C.

§ 504(b) or (2) statutory damages pursuant to 17 U.S.C. § 504(c)."  Bassett v. Jensen, 459 F. Supp. 3d 293, 308 (D. Mass. 2020).  "Compensable damages under 17 U.S.C. § 504(b) include '(1) actual damages, which consist of all income and profits lost as a consequence of the infringement; and (2) any nonduplicative profits earned by the defendant as a consequence of the copyright infringement.'"  Id. (quoting Bruce v. Weekly World News, Inc., 310 F.3d 25, 28 (1st Cir. 2002)).  Plaintiffs need not "prove" their claim for damages in their Amended Complaint; a complaint need only "contain sufficient factual matter, [which if] accepted as true, . . . 'state[s] a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  The Court finds that, for this stage of the proceedings, Plaintiffs have adequately pleaded that the Company and SPIN provide competitive NCLEX services and that the allegedly infringing YouTube Video, which Bryan posted on SPIN's YouTube channel, could plausibly lead customers to use SPIN's NCLEX services over Plaintiffs' which could cause lost profits.

## IV.     CONCLUSION

Defendants' motion to dismiss SPIN as a defendant is GRANTED without prejudice. Defendants' motion is otherwise DENIED.

**SO ORDERED.**

August 16, 2023                                              /s/ Allison D. Burroughs
                                                            ALLISON D. BURROUGHS
                                                            U.S. DISTRICT JUDGE