UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ASCEND LEARNING, LLC, and ASSESSMENT TECHNOLOGIES INSTITUTE, L.L.C., | * * * * * * | |
| Plaintiffs, | * | Civil Action No. 22-cv-11978-ADB |
| v. | * * * * | |
| BRIDGETTE BRYAN, | * * | |
| Defendant. | * * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Ascend Learning, LLC ("Ascend") and Assessment Technologies Institute, L.L.C. ("ATI") (collectively, the "Plaintiffs" or the "Company") filed this action against Bridgette Bryan ("Bryan" or "Defendant"), a former employee of the Company, and SPIN-Learning, LLC ("SPIN"), a direct competitor of the Company. See [ECF No. 18 ("Am. Compl.")]. After the Court granted Defendant's motion to dismiss SPIN as a defendant, see [ECF No. 39], Bryan asserted affirmative defenses and counterclaims, [ECF No. 40 ("Counterclaim Complaint" or "Counterclaim Compl.")], alleging that the Company and John Does 1–5 committed fraud/intentional misrepresentation/deceit (Count I) and conspired to commit fraud (Count II). Before the Court is the Company's motion to dismiss the Counterclaim Complaint, [ECF No. 44], and Bryan's motion to strike the Company's Declaration, including Exhibits C and D,

attached to the Company's motion, [ECF No. 52]. For the reasons set forth below, the Company's motion is GRANTED.

I.   BACKGROUND

   A.   Factual Background

The following facts are primarily drawn from the Counterclaim Complaint, the well-pleaded allegations of which are taken as true for purposes of evaluating the Company's motion to dismiss. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014).[1]

The Company develops online educational resources for nursing schools. [Am. Compl. ¶ 21]. In or around June or July 2010, Bryan, a registered nurse and resident of Mississippi, began working for the Company as a part-time contractor/nurse educator. [Counterclaim Compl. ¶¶ 1, 5–6]. A few months later, on November 29, 2010, the Company offered Bryan a full-time employment position in the role of LR Educator/NCLEX Specialist in the Company's Research and Development Department, see [ECF No. 40-1 ("Employment Offer")], which she accepted, and started on or about January 2, 2011, [Counterclaim Compl. ¶¶ 7,10]. The Employment Offer, Bryan avers, "was not contingent upon signing any employment agreement, confidentiality agreement, non-compete agreement, and/or intellectual property agreement nor were any such agreements contemplated by the [offer]." [Id. ¶ 9]. In fact, the company "never required her to sign any employment agreement, confidentiality agreement, non-compete agreement, and/or intellectual property agreement" or "Company Confidentiality, Inventions and Non-Solicitation Agreement." [Id. ¶¶ 12, 14–15].

---

[1] Paragraph citations for the Counterclaim Complaint facts begin on page 16 of the Counterclaim Complaint.

"Not long after becoming a full-time employee," the Company promoted Bryan to a management position and then, in or around December 2018, to Director of NCLEX Services, a position which she seemingly held until she resigned from the Company on May 2, 2022. [Counterclaim Compl. ¶¶ 16, 18, 23].  When assuming the position of Director, Bryan also did not sign any employee agreement, confidentiality, non-compete, or intellectual property agreement.  [Id. ¶¶ 17, 19, 22].

A few days after her resignation, on approximately May 27, 2022, Bryan received a letter (the "May 2022 Letter") from the Company, demanding that she "cease and desist from any violation of [a] 'Confidentiality, Inventions and Non-Solicitation Agreement[.]'" [Counterclaim Compl. ¶ 28].  The May 2022 Letter did not include a copy of the agreement.  [Id. ¶ 30].

Because Bryan had never seen or signed such an agreement during her employment at the Company,[2] see [Counterclaim Compl. ¶¶ 15, 21, 22], she requested and, "after many weeks," obtained a copy of the agreement purportedly signed by her, [id. ¶¶ 33, 35]; see [ECF No. 40-2 (the "Non-Solicitation Agreement")].  Bryan alleges that the "Company forged Bryan's signature on the Agreement" after her resignation in May 2022 and then added it to her personnel file. [Counterclaim Compl. ¶¶ 36–38; see Non-Solicitation Agreement at 6].  She maintains that "John Does 1-5 acted in concert with and on behalf of the company to forge Bryan's signature on the [Non-Solicitation] Agreement" and that "employees in the Company's Human Resources Department were reprimanded because they were unable to locate any [Non-Solicitation] Agreement for Bryan."  [Counterclaim Compl. ¶¶ 40–41].

---

[2] During her employment at the Company, Bryan "had full and unfettered access to her Company personnel file."  [Counterclaim Compl. ¶ 21].

3

### B. Procedural History

The Company filed the operative complaint on January 5, 2023, [ECF No. 18], and Bryan moved to dismiss the action on January 20, 2023, [ECF No. 22]. On August 30, 2023, Bryan filed the Counterclaim Complaint, [ECF No. 40], and the Company moved to dismiss pursuant to Rule 12(b)(6) on October 4, 2023, [ECF No. 44]. Bryan opposed on October 20, 2023, [ECF No. 51], and on the same day filed a motion to strike the declaration and two exhibits attached to the Company's motion to dismiss, [ECF No. 52]. On November 3, 2023, the Company replied to Bryan's opposition, [ECF No. 57], and opposed the motion to strike, [ECF No. 56].

## II. DISCUSSION

### A. The Company's Motion to Dismiss

#### 1. Legal Standard

On a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff-in-counterclaim's theory, and draw all reasonable inferences from those facts in favor of the plaintiff-in-counterclaim. See United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not required, a counterclaim complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted). The facts alleged must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570). Importantly, "a court may not look beyond the facts alleged in the complaint,

4

documents incorporated by reference therein and facts susceptible to judicial notice." MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass 2020).

When assessing the sufficiency of a counterclaim complaint, the Court first "separate[s] the [pleading's] factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." A.G. ex rel. Maddox, 732 F.3d at 80 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the [defendant-in-counterclaim] is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

> i. Count I: Fraud/Intentional Misrepresentation/Deceit

In relation to Count I, Bryan alleges that the Company and John Does 1–5 "intentionally and knowingly forged Bryan's signature to the [Non-Solicitation] Agreement after her resignation . . . and fraudulently placed the forged document into Bryan's Company personnel file." [Counterclaim Compl. ¶ 49].  They did so, Bryan contends, "with the intent to interfere with [her] subsequent employment as well as her business and business relationships." [Id. ¶ 51].  As a result of the Company's purported wrongdoing, "Bryan has suffered financial loss." [Id. ¶ 52].

The Company seeks to have Count I dismissed on the ground that it was not pled with the particularity required by Federal Rule of Civil Procedure 9(b) and, specifically, that Bryan failed to plead material elements, such as actual reliance, necessary to prevail on a fraud/deceit/misrepresentation claim. [ECF No. 45 at 4, 8–12].  In response, Bryan asserts that she "sufficiently pled detailed facts in accordance with Rule 9(b) satisfying the elements of

fraud," [ECF No. 51 at 6], and that the Company impermissibly seeks to introduce facts and assertions by directing the Court to Exhibits C and D, [id. at 6–7].

Under Massachusetts law, in order to establish a cause of action for fraud and deceit, a plaintiff must show "that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [its] damage." Danca v. Taunton Sav. Bank, 429 N.E.2d 1129, 1133 (Mass. 1982) (internal quotation marks and citation omitted). Rule 9(b) provides for a heightened pleading standard in fraud cases and requires that a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Pleading with particularity entails specifying "(1) the allegedly fraudulent statements; (2) the identity of the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent." In re Allaire Corp. Sec. Litig., 224 F. Supp. 2d 319, 325 (D. Mass. 2002). This requires the pleading to "go beyond mere allegations based upon information and belief, and specify the source of the information and the reasons for the belief." Id.

Here, the limited factual allegations contained in the Counterclaim Complaint and described supra are lacking in this respect. Bryan's allegations rely heavily on her "information and belief" and fail to "specify[] the source of the information and the reasons for the belief." Lirette v. Shiva Corp., 27 F. Supp. 2d 268, 275 (D. Mass. 1998); see, e.g., [Counterclaim Compl. ¶¶ 37–39 ("Upon information and reasonable belief, the Company forged Bryan's signature on the Agreement"; "Upon information and reasonable belief, the Company forged Bryan's signature on the Agreement after her resignation from the Company on May 2, 2022"; "Upon information and reasonable belief, the Company forged Bryan's signature on the Agreement

after her resignation from the Company on May 2, 2022 and subsequently placed the forged document into Bryan's Company personnel file")]; see also [Counterclaim Compl. ¶¶ 41, 44–45]. This, the First Circuit has determined, is insufficient to "pass muster under . . . Rule 9(b)." Shiva Corp., 27 F. Supp. 2d at 275. In sum, Bryan neither describes with particularity the allegedly misleading representations by the Company nor identifies the "who, what, where, and when" of the misrepresentations, and Count I fails on this basis alone. See Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29–30 (1st Cir. 2004). Nonetheless, the Court grants Bryan leave to amend the Counterclaim Complaint should she have more particularized information or develop it during discovery.

ii.   Count II: Conspiracy to Commit Fraud

With regards to Count II, Bryan further claims that the Company and John Does' "actions, agreements, and coordinated conduct [] constitutes conspiracy to commit fraud." [Counterclaim Compl. ¶¶ 54, 55–57]. Because "fraud lies at the core of the [instant] action . . . the particularity requirements of Rule 9(b) must be met." Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985). Where Bryan has failed to sufficiently plead allegations of fraud, she has, inter alia, also not asserted a claim for conspiracy to commit fraud. See Michael Anthony Assocs., Inc. v. Next Jump, Inc., No. 11-cv-10052, 2012 WL 604503, at *6 (Mass. App. Ct. Feb 23, 2012) ("Without fraud . . . there can be no conspiracy.").

### B. Bryan's Motion to Strike

Because the Court did not rely on the Declaration and Exhibits at issue in granting the Company's motion to dismiss the Counterclaim Complaint, it need not and will not rule on Bryan's motion to strike.[3]

## III. CONCLUSION

Accordingly, the Company's motion to dismiss, [ECF No. 44], is **GRANTED**, and Bryan's motion to strike, [ECF No. 52], is moot.

**SO ORDERED.**

August 14, 2024                                                      */s/ Allison D. Burroughs*
                                                                      ALLISON D. BURROUGHS
                                                                      U.S. DISTRICT JUDGE

---

[3] Bryan moves to strike the Company's declaration of Kimala Dodson ("Declaration"), including Exhibit C which pertains to an audit report conducted by a third-party company in 2013, and indicates that Bryan signed both a "Confidentiality, Inventions and Non-Solicitation Agreement" and "Intellectual Property, Confidentiality and Non-Compete Agreement," and Exhibit D, an email exchange between the Company's human resources personnel and various supervisors, identifying individuals who had not yet executed the Confidentiality, Inventions and Non-Solicitations agreements, dated September 2012. [ECF No. 53 at 1–2]. Specifically, Bryan questions the exhibits' authenticity and maintains that they are neither referred to nor relied upon in the Counterclaim Complaint. [Id. at 3–6].

Even though the Court does not rule on the motion to strike, it notes that "[o]rdinarily . . . any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (citing Fed. R. Civ. P. 12(b)(6)). The Company is reminded that generally "narrow exceptions" to this exist only "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id.